```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA

_____
                               )
NATIONAL SECURITY ARCHIVE,     )
                               )
         Plaintiff,            )
                               )
     v.                        )    Civil Action No. 11-724 (GK)
                               )
CENTRAL INTELLIGENCE AGENCY,   )
                               )
         Defendant.            )
_____)
```

## MEMORANDUM OPINION

Plaintiff, National Security Archive ("NSA"), brings this action against Defendant, the Central Intelligence Agency ("CIA"), under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Plaintiff seeks material related to the CIA's internal investigation of the Bay of Pigs Operation. This matter is before the Court on Defendant's Motion for Summary Judgment [Dkt. No. 8] and Plaintiff's Cross-Motion for Partial Summary Judgment [Dkt. No. 10]. Upon consideration of the Motions, Oppositions, and Replies, and the entire record herein, and for the reasons set forth below, Defendant's Motion for Summary Judgment is **granted** and Plaintiff's Cross-Motion for Partial Summary Judgment is **denied.**

## I. BACKGROUND[1]

The NSA "is an independent non-governmental research institute and library" which "serves as a repository of government records on a wide range of topics pertaining to the national security, foreign, intelligence, and economic policies of the United States." Compl. ¶ 3 [Dkt. No. 1]. This case concerns the NSA's efforts to obtain a four-volume history of the Bay of Pigs Operation, compiled by former CIA historian Dr. Jack B. Pfeiffer in the late 1970s and early 1980s. On August 10, 11, and 15, 2005, the NSA sent the CIA letters seeking access to Volumes I, II, IV, and V of the Official History of the Bay of Pigs Operation. Lutz Decl. Exs. A, B, C [Dkt. No. 8-1].

In three separate responses, dated September 7, 2005, the CIA acknowledged that it had received the NSA's requests for Volumes I, II, IV, and V. Lutz Decl. Ex. D. However, according to the NSA, it received no substantive response from the CIA between September 7, 2005, and the filing of the Complaint, on April 14, 2011. Pl.' Mot. for Summ. J. 3. Three months after the Complaint was filed, on July 25, 2011, the CIA released Volumes I, II, and IV to the NSA. The CIA has offered no explanation as to why it failed to provide any materials to the NSA in the five years and seven months that elapsed between acknowledgment of the FOIA requests and the filing

---

[1] Unless otherwise noted, the facts set forth herein are undisputed and drawn from the parties' Statements of Undisputed Material Facts submitted pursuant to Local Civil Rule 7(h).

of this lawsuit, but was able to release extensive materials three months after this lawsuit was filed.

Nevertheless, the CIA did release Volumes I, II, and IV with minimal redactions. The only issue now in dispute is whether the CIA should also have released Volume V, which it has withheld in its entirety. Def.'s Mot. for Summ. J. 1; Pl.'s Mot. for Partial Summ. J. 1. According to the CIA, this volume, which is titled "CIA's Internal Investigation of the Bay of Pigs Operations," is covered by the deliberative process privilege and therefore exempt from disclosure under FOIA.[2] Def.'s Mot. for Summ. J. 3-4.

On September 26, 2011, the CIA filed its Motion for Summary Judgment. November 7, 2011, the NSA filed its Opposition and Cross-Motion for Partial Summary Judgment. On November 29, 2011, the CIA filed its combined Opposition and Reply [Dkt. No. 12]. On December 21, 2011, the NSA filed its Reply [Dkt. No. 14].

## II. STANDARD OF REVIEW

The purpose of FOIA is to "'to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny.'" Morley v. CIA, 508 F.3d 1108, 1114 (D.C. Cir.

---

[2] The CIA also maintains that portions of Volume V are exempt under Exemptions 1 and 3, which apply to information classified in the interest of national defense or foreign policy and to information protected from disclosure by statute, respectively. Def.'s Mot. for Summ. J. 7-10; see 5 U.S.C. § 552(b)(1), (3). Because, for the reasons given below, the entirety of Volume V is covered by Exemption 5, there is no need to address the applicability of Exemption 1 or 3.

2007) (quoting Dep't of Air Force v. Rose, 425 U.S. 352, 361 (1976)). FOIA "requires agencies to comply with requests to make their records available to the public, unless the requested records fall within one or more of nine categories of exempt material." Oglesby v. U.S. Dep't of Army, 79 F.3d 1172, 1176 (D.C. Cir. 1996) (citing 5 U.S.C. § 552(a), (b)). An agency that withholds information pursuant to a FOIA exemption bears the burden of justifying its decision, Petroleum Info. Corp. v. Dep't of the Interior, 976 F.2d 1429, 1433 (D.C. Cir. 1992) (citing 5 U.S.C. § 552(a)(4)(B)), and must submit an index of all materials withheld. Vaughn v. Rosen, 484 F.2d 820, 827-28 (D.C. Cir. 1973). In determining whether an agency has properly withheld requested documents under a FOIA exemption, the district court conducts a de novo review of the agency's decision. 5 U.S.C. § 552(a)(4)(B).

FOIA cases are typically and appropriately decided on motions for summary judgment. Gold Anti-Trust Action Comm., Inc. v. Bd. of Governors of Fed. Reserve Sys., 762 F. Supp. 2d 123, 130 (D.D.C. 2011); Defenders of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). Summary judgment will be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits or declarations, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c).

In a FOIA case, the court may award summary judgment solely on the basis of information provided in affidavits or declarations when they (1) "describe the documents and the justifications for nondisclosure with reasonably specific detail;" (2) "demonstrate that the information withheld logically falls within the claimed exemption;" and (3) "are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." <u>Military Audit Project v. Casey</u>, 656 F.2d 724, 738 (D.C. Cir. 1981). Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" <u>SafeCard Servs., Inc. v. Sec. & Exch. Comm'n</u>, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting <u>Ground Saucer Watch, Inc. v. CIA</u>, 692 F.2d 770, 771 (D.C. Cir. 1981)).

**III. ANALYSIS**

As noted above, the sole issue in this case is whether Volume V was properly withheld under FOIA Exemption 5. Exemption 5 permits an agency to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Exemption 5 "is interpreted to encompass, <u>inter</u> <u>alia</u>, three evidentiary privileges: the deliberative process privilege, the attorney-client privilege, and the attorney work product privilege." <u>Tax Analysts v. IRS</u>, 294 F.3d 71, 76 (D.C. Cir. 2002).

5

The relevant privilege here, the deliberative process privilege, "'covers documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8-9 (2001) (quoting NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 150 (1975)); see also Public Citizen, Inc. v. Office of Mgmt. & Budget, 598 F.3d 865, 874-75 (D.C. Cir. 2010). Because "advice and information would not flow freely within an agency if such consultative information were open to public scrutiny," Exemption 5 "allows agency staffers to provide decisionmakers with candid advice without fear of public scrutiny" and "helps to prevent premature disclosure of proposed policies and protects against public confusion through the disclosure of documents suggesting reasons for policy decisions that were ultimately not taken." Judicial Watch, Inc. v. U.S. Postal Serv., 297 F. Supp. 2d 252, 258-59 (D.D.C. 2004).

To invoke the deliberative process privilege, an agency must show that the requested material meets two requirements: it must be "both 'predecisional' and 'deliberative.'" Public Citizen, 598 F.3d at 874 (quoting Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980)); see also In re Sealed Case, 121 F.3d 729, 737 (D.C. Cir. 1997). Material is "predecisional if 'it was generated before the adoption of an agency policy.'" Judicial

6

Watch, Inc. v. Food & Drug Admin., 449 F.3d 141, 151 (D.C. Cir. 2006) (quoting Coastal States, 617 F.2d at 866). Accordingly, a "court must first be able to pinpoint an agency decision or policy to which these documents contributed." Morley, 508 F.3d at 1127.

Material is deliberative if "it reflects the give-and-take of the consultative process." Judicial Watch, 449 F.3d at 151 (internal quotation omitted). Deliberative materials "'reflect[ ] advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated, [or] the personal opinions of the writer prior to the agency's adoptions of a policy.'" Public Citizen, 598 F.3d at 875 (quoting Taxation With Representation Fund v. IRS, 646 F.2d 666, 677 (D.C. Cir. 1981) (alterations in Public Citizen)). Hence, the privilege covers information that "reflect[s] the personal opinions of the writer rather than the policy of the agency." Morley, 508 F.3d at 1127 (internal quotation omitted). But when the information at issue is "[f]actual material that does not reveal the deliberative process," it is not protected. Id. (quoting Paisley v. CIA, 712 F.2d 686, 698 (D.C. Cir. 1983)).

In order to withhold a document under the deliberative process privilege, the agency must make the additional showing that disclosure would cause injury to the decisionmaking process. Army Times Publ'g Co. v. Dep't of the Air Force, 998 F.2d 1067, 1071 (D.C. Cir. 1993); Judicial Watch, 297 F. Supp. 2d at 259.

7

Therefore, "the agency must 'show, by specific and detailed proof that disclosure would defeat, rather than further, the purposes of FOIA.'" Hall v. U.S. Dep't of Justice, 552 F. Supp. 2d 23, 29 (D.D.C. 2008) (quoting Mead Data Cent. Inc. v. U.S. Dep't of Air Force, 566 F.2d 242, 258 (D.C. Cir. 1977)).

The CIA offers the Declarations of Martha Lutz, an Information Review Officer, and Dr. David S. Robarge, the Chief Historian for the CIA, to support its view that Volume V is predecisional and deliberative. Lutz explains that Dr. Pfeiffer was tasked during the 1970s and 1980s with preparing a classified history of the Bay of Pigs Operation. Lutz Decl. ¶¶ 16-17. Two chapters from Dr. Pfeiffer's 1981 draft fourth volume, which addressed the Inspector General's report for the Bay of Pigs Operation and the Directorate of Plans' response to that report, became the first draft of Volume V, which covers the Internal Investigation of the Bay of Pigs Operation. Id. ¶ 18. Despite multiple drafts, Dr. Pfeiffer's supervisor, then Chief Historian Dr. J. Kenneth McDonald, found serious deficiencies with Dr. Pfeiffer's proposed Volume V, and therefore it never moved beyond the first stage of the CIA's review process. Id. ¶¶ 19-20.

This is not the first time the CIA has denied a FOIA request for Volume V. In 1989, Judge John H. Pratt considered a request by Dr. Pfeiffer, who had by then retired, for access to Volume V.

8

Pfeiffer v. CIA, 721 F. Supp. 337, 338 (D.D.C. 1989). Judge Pratt found that Volume V was a predecisional draft, stating:

> We are unpersuaded that the Internal Investigation Report that plaintiff seeks to have disclosed is a "final" agency history, nor are we convinced that plaintiff had authority to unclassify the material. The subjective views of a staff member that the decision-making process is complete and "final" when he submits his recommendation to a superior is of no consequence.

Id. at 340. Therefore, Judge Pratt held that Volume V was properly withheld under Exemption 5. Id. at 341.

This Court finds no reason to depart from Judge Pratt's sound conclusion. Volume V was undoubtedly "generated before the adoption of an agency policy," and is therefore predecisional. Judicial Watch, 449 F.3d at 151. Volume V represents only the first step in a multi-step process of creating an official CIA history. Robarge Decl. ¶¶ 4-8 [Dkt. No. 12-1]; see Morley, 508 F.3d at 1127 (a "court must first be able to pinpoint an agency decision or policy to which these documents contributed."). As the current Chief Historian for the CIA, Dr. Robarge, explains, Volume V did not even pass through the first stage of a multilayer review process. Robarge Decl. ¶¶ 13-14.

In addition, Volume V represents a proposal by a subordinate member of the history staff--a proposal which was rejected by the Chief Historian due to significant deficiencies. Morley, 508 F.3d at 1127 ("'a document from a subordinate to a superior official is

9

more likely to be predecisional.'" (quoting Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980))). Volume V was therefore generated prior to and in preparation for completion of the CIA's official history, i.e. its final policy, but was rejected for inclusion in the final publication and remained a draft.

Volume V also "reflects the give-and-take of the consultative process" and is therefore deliberative. Judicial Watch, 449 F.3d at 151 (internal quotation omitted). As both Declarants observe, Volume V represents an intermediate step in the CIA's intensive review process. Robarge Decl. ¶ 13; Lutz Decl. ¶ 19; see Public Citizen, 598 F.3d at 875 (the privilege covers documents that "reflect[ ] advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated." (internal quotation omitted)). Further, in the view of Dr. Pfeiffer's superiors, Volume V contained significant problems, including "offer[ing] a polemic of recriminations against CIA officers who later criticized the operation," and was therefore unfit for publication. Robarge Decl. ¶ 13; Lutz Decl. ¶ 20. Hence, Volume V "reflect[s] the personal opinions of the writer rather than the policy of the agency." Morley, 508 F.3d at 1127 (internal quotation omitted).

Finally, the CIA has made a strong and specific showing that disclosure of Volume V would harm the deliberative process. Army

Times Publ'g Co., 998 F.2d at 1071; Judicial Watch, 297 F. Supp. 2d at 259. Dr. Robarge has convincingly demonstrated that releasing a draft history may cause staff historians not "to reach--or even propose--judgments that may be critical of the Agency's performance or otherwise unpopular within the Agency." Robarge Decl. ¶ 10. Disclosure of a draft history would risk public release of inaccurate historical information. Id. ¶ 11. The CIA has also explained why release of Volume V, in particular, would cause harm. Specifically, while Dr. Pfeiffer's approach may have had its deficiencies, it clearly contained controversial opinions and therefore "[d]isclosure of Volume V would have a chilling effect on CIA's current historians who would henceforth be inhibited from trying out innovative, unorthodox or unpopular interpretations in a draft manuscript." Id. ¶¶ 13, 17.

The NSA argues that the passage of time should serve as basis for disclosure. Pl.'s Mot. for Partial Summ. J. 7-9. The NSA does not, however, cite any case supporting the notion that a document becomes less predecisional or deliberative over time. More importantly, the CIA has shown why, in this case, the passage of time has not affected the rationale for invoking Exemption 5: the CIA does not want to discourage disagreement, of which there was clearly much in this instance, among its historians. Robarge Decl. ¶ 10.

Given the fact that, as an agency, the CIA operates in secrecy and faces relatively little public scrutiny of its operations for that reason, and given the importance of the activities and operations it undertakes, it is particularly important that in-house historians--who do have the facts--feel free to present their views, theories, and critiques of the Agency's actions. See Morley, 508 F.3d at 1127 ("To test whether disclosure of a document is likely to adversely affect the purposes of the privilege, courts ask themselves whether the document is so candid or personal in nature that public disclosure is likely in the future to stifle honest and frank communication within the agency." (internal quotation omitted)); James Madison Project v. CIA, 607 F. Supp. 2d 109, 128 (D.D.C. 2009) ("The critical factor in determining whether the material is deliberative in nature 'is whether disclosure of the information would discourage candid discussion within the agency.'" (quoting Access Reports v. Dep't of Justice, 926 F.2d 1192, 1194 (D.C. Cir. 1991))).

In short, the CIA has satisfied its burden of demonstrating that Volume V is predecisional and deliberative, and that its release would harm the deliberative process. Public Citizen, 598 F.3d at 874; Army Times Publ'g Co., 998 F.2d at 1071. Therefore, Volume V is covered by the deliberative process privilege and properly withheld under Exemption 5. Klamath Water Users Protective Ass'n, 532 U.S. at 8-9; Morley, 508 F.3d at 1126-27.

**IV. CONCLUSION**

For the reasons set forth above, Defendant's Motion for Summary Judgment is **granted** and Plaintiff's Motion for Partial Summary Judgment is **denied**. An Order shall accompany this Memorandum Opinion.

May 10, 2012

/s/
Gladys Kessler
United States District Judge